# Exhibit A

## INTER-ORGANIZATIONAL PLEDGE AND GRANT AGREEMENT BETWEEN THE AMERICAN CENTER FOR LAW AND JUSTICE, INC., NATIONAL, AND THE AMERICAN CENTER FOR LAW AND JUSTICE,

**THIS AGREEMENT** is made as of August 1, 1997, between the American Center for Law and Justice, Inc., Virginia Beach, Virginia, a Commonwealth of Virginia not-for-profit corporation (hereinafter "ACLJ National") and the American Center for Law and Justice, Northeast, Inc., a Connecticut not-for-profit corporation (hereinafter "ACLJ Northeast ").

**WHEREAS** the ACLJ National believes that it can further advance the public interest and the principles of the First Amendment, pro-life, and pro-family issues by supporting separate and independent regional corporations; and

**WHEREAS** the ACLJ , Northeast seeks to increase its public interest mission through increased involvement in advancing the principles of the First Amendment, pro-life, and pro-family issues through litigation, government, and regulatory affairs; and

**WHEREAS** the ACLJ National wishes to provide a sustaining grant to ACLJ Northeast to help cover the costs and expenses of ACLJ , Northeast in developing and establishing its organization in; and

**WHEREAS** the ACLJ , Northeast wishes to establish a distinct and self-sufficient non-profit corporate presence over a five-year period;

**NOW THEREFORE**, in consideration of the foregoing and in reliance upon the promises hereinafter set forth, ACLJ National and ACLJ , Northeast hereby agree as follows:

1. **THE ACLJ NATIONAL GRANT TO ACLJ, NORTHEAST :**

    A. For a period of five (5) years, beginning August 1, 1997, and ending July 31, 2002, ACLJ National shall provide an annual grant/pledge of _One-hundred seventy-eight thousand and five hundred dollars ($178,500.00) at a rate of Fourteen thousand eight hundred and seventy five thousand dollars ($ 14,875.00) per month to ACLJ , Northeast (hereinafter "Grant"). This yearly and monthly amount shall increase annually according to the Consumer Price Index ("CPI") increase, or increase based on the actual documented increases for the cost of office rent, office equipment rental and maintenance, travel, telephone, computer and similar office operational expenses, whichever is greater, for the prior Grant year. In addition, the prior Grant year amount shall increase by the amount of any merit increases for employees without employment agreements (but in no event above five percent (5%) of said employees then current salary), subject to ACLJ National being able to off-set the amount of any said increase due to merit pay increases if ACLJ Northeast was able to raise funding from its own fundraising and solicitation efforts in an amount equal to at least ten percent (10%) of the Grant. An initial one

(1) month deposit payment of $14,875.00 Dollars ($ 14,875.00) shall be made in the first month, with the $ 14,875.00 monthly payments for the first year to be made thereafter.

B. In addition to the Grant, ACLJ National will pay to ACLJ, Northeast One Hundred Percent (100%) of ACLJ, Northeast's costs for health, dental, disability, life, workman's compensation, professional liability, personal liability insurance, and WESTLAW research (or similar legal resource) costs throughout the term(s) of this Agreement, to ACLJ, Northeast. ACLJ, Northeast shall be responsible for all costs associated with any qualified retirement plan it may adopt.

C. Upon receipt of a detailed case expenditure or reimbursement request, ACLJ National shall fund the printing costs associated with a particular case, travel costs of attorneys (including lodging and meals), deposition costs, expert witness fees, copying, filing fees and other court costs, and other costs approved by the Chief Counsel in advance.

2. **THE ACLJ, NORTHEAST'S UNDERTAKINGS:**

A. ACLJ Northeast will maintain its corporate financial books and records in accordance with generally accepted accounting principles. These books and records shall be made available to ACLJ National on written request from the Chief Counsel's Office. ACLJ National shall have the right to request an audit of ACLJ, Northeast's finances. Such audits are to be conducted by ACLJ National personnel or by an independent licensed certified public accountant of ACLJ National's choosing.

B. ACLJ Northeast shall be responsible for all employee payroll functions including the completion of all necessary W-2, W-3, and 1099 forms, and the filing of all necessary tax forms. ACLJ Northeast shall also be responsible for the payment of all taxes due from the organization.

C. All employee salaries and payroll taxes (including FICA) will be paid by ACLJ Northeast. ACLJ, Northeast agrees to assume the payment and performance of those employee and/or independent contractor agreements, listed in Exhibit A. To the extent that any third party approval is needed to complete such assignments, both parties agree to cooperate in obtaining such approvals.

D. All lease payments and related office costs (such as electricity and telephone bills) will be paid by ACLJ, Northeast.

E. All library maintenance costs will be paid by ACLJ, Northeast.
F. ACLJ National credit cards held by ACLJ, Northeast employees will be destroyed. ACLJ, Northeast will obtain its own corporate credit cards for which it will be solely obligated.

G.     ACLJ, Northeast will submit an annual grant request form to ACLJ National for additional funding above and beyond this Grant. Such grant requests for additional funding will be submitted on a form similar to the form attached as Exhibit B and must be approved by a grant review committee as determined by ACLJ National.

3. **RESPONSIBILITIES OF ACLJ NATIONAL:**

A.     Assumption of the responsibilities for rent and salary payments through the monthly grant/pledge payments by ACLJ National to ACLJ Northeast, does not abrogate the outstanding contractual responsibilities of ACLJ National. Such outstanding responsibilities include the lease agreement between ACLJ National and 1000 Thomas Jefferson Associates, and subject to Section 2.C. *above*, any outstanding employment contracts. Upon the termination of the present lease agreement, ACLJ, Northeast shall assume all responsibilities under any new lease arrangement.

B.     ACLJ National Chief Counsel Jay Alan Sekulow will on a regular and consistent basis assist in the publicity and fund raising efforts of ACLJ, Northeast through personal appearances at fund raising activities, or through other media outlets such as television, radio or written communications. Mr. Sekulow agrees to this accommodation under this Agreement.

4. **REGIONAL SCOPE OF ACLJ, NORTHEAST :**

A.     (1) ACLJ, Northeast's explicit areas of responsibility are the states of New York, Rhode Island, Maryland, New Jersey, Vermont, New Hampshire, Maine, Connecticut and New Jersey. The ACLJ, Northeast shall have the primary responsibility for any litigation, governmental initiative, or legislative effort arising in these states. ACLJ Northeast has one (_1_) litigation and assisting counsel. Cases originating from the ACLJ Northeast offices shall remain within that organization, unless the Chief Counsel determines that exigent circumstances or other significant factors require a different regional ACLJ organization to handle the matter. The governing laws and legal ethical responsibilities of the pertinent jurisdictions will be determining factors in all such decisions.

    (2) No representation of any party in, direct participation in, or initiation or prosecution of, any federal, state or local administrative, legislative, legal or court proceeding (herein collectively "Legal Matter") may be undertaken by ACLJ Northeast without the express approval or consent of the ACLJ National's Chief Counsel, who shall also have continuous oversight and management authority over all such Legal Matters, including the discretion to assign counsel to participate in such Legal Matters. ACLJ National's Chief Counsel shall be deemed to have given express approval and consent for ACLJ Northeast's representation of a party in, direct participation in, or initiation or prosecution of, any Legal Matter if no denial or rejection is received by ACLJ, Northeast within two (2) days after it provides

notice (which need not be in writing) to ACLJ National's Chief Counsel of its desire or intention to represent a party in, participate in, or initiate or prosecute any Legal Matter.

(3) Nothing specified in paragraph 4.A(2) shall limit the right of any attorney working for ACLJ, Northeast to engage in private legal representation and/or work without the need for approval or notice to ACLJ National or its Chief Counsel.

B. ACLJ National will provide ACLJ, Northeast a monthly list of potential cases, based upon that month's intake from ACLJ National and ACLJ South. ACLJ Northeast shall have the opportunity to request that certain cases on the monthly list be assigned to ACLJ Northeast for follow-up and/or prosecution. Such case assignments shall be made by the Chief Counsel.

C. ACLJ Northeast's fund raising activities may occur outside of the States of New Jersey, Maine, Connecticut, Vermont, New Hampshire, New York, Rhode Island or Maryland. ACLJ, Northeast shall, from time to time, provide notice to ACLJ National of its fundraising solicitations and activities.

D. ACLJ _, Northeast may raise funds and/or send solicitations and/or mailings independent of ACLJ National. Upon request by ACLJ, Northeast, ACLJ National shall assist it in preparing and/or mailing solicitations, preparing direct mail packages, choosing the target groups for such mailings, and similar activities. Any monies raised by such mailing funded by ACLJ, Northeast shall be retained by ACLJ, Northeast.

5. **RENEWAL:**

ACLJ National and ACLJ, Northeast agree that this Pledge and Grant Agreement shall automatically renew, with the same terms and conditions, for another five (5) year term at the end of the initial five (5) year term, and annually thereafter, unless canceled for cause pursuant to paragraph 7 hereof, and notice of said cancellation is given at least six (6) months prior to the end of the original five (5) year term, or any renewal thereafter. It is anticipated, however, that throughout the term(s) hereof ACLJ National's annual grant contribution shall increase as provided herein, and based on litigation and other activities undertaken by ACLJ, Northeast.

6. **LIABILITY AND INDEMNIFICATION:**

A. ACLJ National and ACLJ, Northeast expressly acknowledge and agree that the ACLJ National and ACLJ, Northeast are, and intend to maintain, separate corporate entities and as such shall not incur any liability, obligation, or expense on behalf of each other, other than as specified herein. Nothing contained in this Agreement will be deemed to create, or be construed as creating, a principal/agent,

joint venture, or partnership relationship between ACLJ National and ACLJ Northeast.

B. ACLJ National shall indemnify, defend and hold ACLJ, Northeast harmless against and from all claims, damages, liabilities, costs and expenses arising out of any action, suit, proceeding, claim, damage, liability, or obligation which was incurred as a result of the actions of ACLJ National and/or its officers, directors, or employees. ACLJ, Northeast shall indemnify, defend and hold ACLJ National harmless against and from all claims, damages, liabilities, costs and expenses arising out of any action, suit, proceeding, claim, damage, liability, or obligation which was incurred as a result of the actions of ACLJ, Northeast and/or its officers, directors, or employees.

7. **TERMINATION/REVOCATION OF AGREEMENT:**

A. The rights and obligations under this Agreement shall remain in full force unless revoked in accordance with subparagraphs 7.B or 7.C.

B. The ACLJ National shall have the authority to revoke this Agreement if it determines that: (1) the ACLJ, Northeast, during any fiscal or calendar year, has expended or will expend funds in excess of the revenues that ACLJ, Northeast reasonably could have expected to receive or raise during the grant year; (2) ACLJ Northeast has knowingly engaged in any activities in violation of federal or state criminal laws or has engaged in crimes of moral turpitude; (3) ACLJ, Northeast has failed to assure its continued existence as a nonprofit corporation under state law; (4) ACLJ, Northeast has failed to assure its continued existence as a nonprofit corporation under federal law; (5) ACLJ, Northeast has failed to comply with applicable fund raising and solicitation laws; and (6) ACLJ, Northeast has consistently and frequently failed to comply with its notice obligations specified in paragraph 4.A(2) hereof..

C. The parties have the right to terminate this Agreement for cause upon providing ninety (90) days written notice. Any party alleged to have violated the provisions of this Agreement shall have thirty (30) days to cure such violation, or in the case of a cancellation under paragraph 7(B)(5), to initiate the process to cure said failure to comply with the appropriate governmental agency(ies) or court of competent jurisdiction.

8. **ARBITRATION:**

A. Any controversy or claim arising out of or relating to this Agreement between ACLJ National and ACLJ, Northeast shall be submitted by arbitration before and in accordance with the rules of the Christian Conciliation Service with an independent licensed or mutually agreed to arbitrator present during the arbitration process.

B.  In the event that arbitration fails, either party has the right to seek relief in any court of competent jurisdiction.

C.  ACLJ, Northeast is not obligated to resolve or become involved in contractual disputes between ACLJ National and any other party not a party to this Agreement. ACLJ National is not obligated to resolve or become involved in contractual disputes between ACLJ, Northeast and any other party not a party to this Agreement.

D.  Arbitration shall be automatically invoked within forty-five (45) days upon written notice of the failure of either party to fulfill the obligations under this Agreement.

9. **NOTICES:**

Any notice given under this agreement shall be made in writing, and deemed given when mailed by certified mail, postage prepaid, addressed to such party at their respective addresses set forth below, or at such other address as such party may hereafter designate in writing:

**ACLJ National:**
1000 Regent University Drive
P.O. Box 64429
Virginia Beach, Virginia 23467

**ACLJ, Northeast:**
P.O. Box 1108
8 South Main Street
New Milford, Connecticut 06776

10. **CONSTRUCTION AND GOVERNING LAW:**

Each party has participated in the drafting and preparation of this Agreement. Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party on the basis of that party being the "drafter" of this Agreement. This Agreement shall be construed and enforced in accordance with the laws of the Commonwealth of Virginia, without regard to its conflict of laws provisions.

11. **ATTORNEYS' FEES:**

In the event that any action is filed in relation to this Agreement, the unsuccessful party in the action shall pay to the successful party, in addition to all of the sums that either party may be called upon to pay, a reasonable sum for the successful party's attorneys' fees and costs.

12. **ENTIRE AGREEMENT:**

   A.  The language in all parts of this Agreement shall, in all cases, be construed according to its fair meaning, and not strictly for or against either party.

   B.  It is agreed that if any provision of this Agreement shall be determined to be void by any court of competent jurisdiction, then such determination shall not affect any other provision of this Agreement, all of which provisions shall remain in full force and effect; and it is the intention of the parties hereto that if any provision of this Agreement is capable of two constructions, one of which would render the provision void and the other of which would render the provision valid, then the provision shall have the meaning which renders it valid.

   C.  This Agreement will be deemed fully executed upon the signature and acknowledgment of all parties involved in this Agreement. This Agreement may be executed in one or more counterparts, each of which shall constitute an original, but when taken together shall constitute the same instrument.

**IN WITNESS WHEREOF**, the parties have executed and delivered this Agreement as of the date first mentioned above pursuant to all required action of the Board of Directors of both parties.

AMERICAN CENTER FOR LAW AND JUSTICE, INC., NATIONAL

By: _____

Office: _____

Attested by: _____
Secretary

Date: 8/15/97

AMERICAN CENTER FOR LAW AND JUSTICE,
Northeast, Inc.

By: _/s/ Vincent McCarthy_____

Office: _Northeast_____

Attested by: _____
            Secretary

Date: _July 31, 1997_____

## ACKNOWLEDGMENTS

In order to induce the American Center for Law and Justice Northeast and its constituent attorneys to enter into the foregoing Agreement, and in consideration thereof, I represent that I have read the Agreement and I undertake to comply with all of the provisions thereof insofar as they relate to the rendition of my services.

Dated: _August 20, 1997_      By: _/s/ Jay Alan Sekulow_____
                                                         Jay Alan Sekulow, Esquire

Subscribed and sworn to before me this ___20th___ day of ___August___, 1997.

                                                              By: _Bettye D. McPherson_____
                                                                 Notary Public
                                                                 NOTARY PUBLIC, DEKALB COUNTY, GEORGIA
                                                                 MY COMMISSION EXPIRES FEBRUARY 1, 1998