UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AMERICAN CENTER FOR LAW<br>AND JUSTICE – NORTHEAST, INC.,<br>    Plaintiff | :<br>:   CIVIL ACTION NO.<br>:<br>:   3:12-cv-730 (JBA) |
| v. | :<br>: |
| AMERICAN CENTER FOR LAW AND<br>JUSTICE, INC., and JAY ALAN SEKULOW<br>    Defendants. | :<br>:<br>:   JUNE 11, 2012 |

**FIRST AMENDED COMPLAINT**

**I.    INTRODUCTION**

    1.    This is an action for breach of a contract between the Plaintiff and Defendants dated August 1,1997 together with a request for Declaratory Relief clarifying the use of the name "American Center for Law and Justice" in connection with the Plaintiff's corporation, American Center for Law and Justice – Northeast, LLC.  As of May 22, 2012, days after Plaintiff commenced this action, Defendant ACLJ National ceased all payments to Plaintiff pursuant to the Contract.  If Defendant is not ordered to resume making payments to Plaintiff under the Contract, through and beyond July 31, 2012, Plaintiff will not be able to continue operations, and it will cease to exist.  Accordingly, Plaintiff is also seeking a preliminary injunction to restore the status quo and prevent Defendant's unlawful conduct from causing catastrophic - - and irreparable - - harm to Plaintiff, and to Plaintiff's employees, who derive all their income through their work for Plaintiff, and Plaintiff's clients, who receive representation at no charge on important issues of fundamental constitutional significance.  Further, Plaintiff has no adequate relief at law as future damages will not restore Plaintiff as a viable business after it ceases to exist.

## II. THE PARTIES

2. Plaintiff, American Center for Law and Justice – Northeast, Inc., ("ACLJ Northeast"), is a Connecticut not for profit 501(c)(3) corporation, whose business it is to represent individuals and organizations, at no charge, whose First Amendment constitutional rights or whose family rights have been violated. Plaintiff ACLJ Northeast has a principal place of business in Connecticut.

3. Defendant, American Center for Law and Justice, Inc., ("ACLJ National"), is a not for profit corporation with 501(c)(3) status whose mission it is also to represent individuals asserting their First Amendment rights. Defendant ACLJ National is <u>not</u> a Connecticut corporation, and does <u>not</u> have a principal place of business in Connecticut, but Defendant ACLJ National does transact business in the State of Connecticut. Defendant ACLJ National has offices in Virginia, Washington, D.C., New York, Kentucky, and Tennessee, as well as international offices in Israel, Kenya, Russia, France, Pakistan, and Zimbabwe. Defendant ACLJ National is also a d/b/a for another organization called Christian Advocates Serving Evangelism, Inc., which Defendant ACLJ National describes on its website as "a tax-exempt, not for profit, religious corporation as defined under Section 501(c)(3) of the Internal Revenue Code, specifically dedicated to the ideal that religious freedom and freedom of speech are inalienable, God-given rights." Upon information and belief, Christian Advocates Serving Evangelism, Inc. is a shell corporation that conducts no representation of clients, but pays funds to Defendant ACLJ National, members of Defendant Sekulow's family, and other business interests in which Defendant Sekulow's family possess ownership interests. The Executive Director of Defendant ACLJ National is Jordan Sekulow, son of Defendant Jay Sekulow.

4. Defendant, Jay Alan Sekulow, ("Sekulow"), is the principal leader, and Chief Counsel, of Defendant ACLJ National. Sekulow is not only the face of Defendant ACLJ, but, as Chief Counsel, he makes all important decisions regarding the organization, including hiring and firing decisions, and he also conducts a daily radio program that is nationally syndicated called "Jay Sekulow Live" – that is broadcast in Connecticut - in which he promotes ACLJ National and raises funds. Defendant Sekulow signed the Contract that is the subject of this lawsuit, and undertook certain obligations relating to that Contract in order to induce Plaintiff to enter into the Contract. Defendant Sekulow does not reside in the State of Connecticut, but has residences in several other States, including Virginia Beach, VA, Nashville, TN, and in North Carolina. Defendant Sekulow does business in Connecticut and engages in substantial fund-raising activities in Connecticut. Defendant Sekulow's son, Jordan Sekulow, also has a daily radio show, called the "Jordan Sekulow Show" which is syndicated. In both radio shows, Defendant Sekulow discusses, *inter alia*, the work of ACLJ National.

### III. JURISDICTION

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are completely diverse, and the amount in controversy is greater than $75,000.

### IV. BACKGROUND

**The Contract**

6. On August 1, 1997, Defendant ACLJ National and Plaintiff ACLJ Northeast, entered into an "Inter-Organizational Pledge and Grant Agreement" (hereinafter "Contract"). A copy of the Contract is attached hereto as Exhibit A.

7. The Contract also contained an acknowledgement, personally executed by Defendant Sekulow, stating as follows: "In order to induce the American Center for Law and Justice, Northeast and its constituent attorneys to enter into the foregoing Agreement, and in consideration thereof, I represent that I have read the Agreement and I undertake to comply with all of the provisions thereof as they relate to the rendition of my services."

8. Pursuant to that Contract, Defendant ACLJ National agreed to provide annual grants to Plaintiff ACLJ Northeast, at a beginning rate of $178,500 per year, and increasing thereafter, to a present amount of at least $311,000 per year.

9. The original term of the Contract was five years, but it included the following Renewal Clause (paragraph 5):

> ACLJ National and ACLJ Northeast agree that this Pledge and Grant Agreement shall automatically renew, with the same terms and conditions, for another five (5) year term at the end of the initial five (5) year term, and annually thereafter, **unless cancelled for cause pursuant to paragraph 7 hereof**, and notice of said cancellation is given at least six (6) months prior to the end of the original five (5) year term, or any renewal thereafter. It is anticipated, however, that throughout the term hereof of ACLJ National's annual grant contribution shall increase as provided herein, and based on litigation and other activities undertaken by ACLJ, Northeast. (**emphasis added**.)

10. Paragraph 7 of the Contract, which contains no cancellation provision, states as follows:

**Termination/Revocation of Agreement:**

    A. The rights and obligations under this Agreement shall remain in full force unless revoked in accordance with subparagraphs 7.B or 7.C.

    B. The ACLJ National shall have the authority to revoke this Agreement if it determines that (1) the ACLJ, Northeast, during any fiscal or calendar year, has expended or will expend funds in excess of the revenues that ACLJ, Northeast reasonably could have expected to receive or raise during the grant year; (2) ACLJ Northeast has knowingly engaged in any activities in violation of federal or state criminal laws or has engaged in crimes of moral turpitude; (3) ACLJ, Northeast has failed to assure its

continued existence as a nonprofit corporation under state law; (4) ACLJ, Northeast has failed to assure its continued existence as a nonprofit corporation under federal law; (5) ACLJ, Northeast has failed to comply with applicable fund raising and solicitation laws; and (6) ACLJ, Northeast has consistently and frequently failed to comply with its notice obligations specified in paragraph 4.A(2) hereof.

        C.      The parties have the right to terminate this Agreement for cause upon providing ninety (90) days written notice. Any party alleged to have violated the provisions of this Agreement shall have thirty (30) days to cure such violation, or in the case of cancellation under paragraph 7(b)(5), to initiate the process to cure said failure to comply with the appropriate governmental agency(ies) or court of competent jurisdiction.

11. No portion of Paragraph 7 provides Defendant ACLJ National with any authority to unilaterally cancel, revoke, or terminate the Contract without cause, at any time.

12. Thus, at all relevant times, Plaintiff ACLJ Northeast understood, and reasonably expected, that the Contract between ACLJ Northeast and ACLJ National would continue to renew, unless it was cancelled for cause pursuant to paragraph 7 of the Contract.

13. In 2002, at the conclusion of the first five year term of the Contract, the Contract renewed for another five year term pursuant to the Renewal Clause of the Contract.

14. In 2007, at the conclusion of the second five year term, the Contract renewed again pursuant to the Renewal clause of the Contract.

15. The Contract continued to renew annually pursuant to the Renewal Clause of the Contract in 2008, 2009, 2010, and 2011.

**Defendant ACLJ National's Obligations Under the Contract**

16. Since 1997, the funds provided by Defendant ACLJ National, pursuant to the Contract, have accounted for nearly 100 percent of the total revenue received by Plaintiff ACLJ Northeast.

17. In the term of the Contract between August 1, 2011 and July 31, 2012, Defendant ACLJ National was scheduled to provide approximately $311,000 in funding to Plaintiff ACLJ

Northeast to support its operation and expenses, in addition to reimbursement for litigation related expenses.

18. In addition to the annual Grant paid by Defendant ACLJ National to Plaintiff ACLJ Northeast, which is paid in bi-monthly installments, the Contract provides that Defendant ACLJ National will also pay significant amounts for Plaintiff ACLJ Northeast's costs for health, dental, disability, life, workman's compensation, professional liability, personal liability insurance, and WESTLAW research (or similar legal resource) costs through the term(s) of the Contract. Defendant ACLJ National maintains a 401(k) plan in which ACLJ Northeast employee's participate.

19. The Contract also provides that Defendant ACLJ National shall fund the costs incurred in connection with litigation matters handled by Plaintiff ACLJ Northeast, including printing costs, travel costs of attorneys (including lodging and meals), deposition costs, expert witness fees, copying, filing fees and other court costs, and other costs approved by the Chief Counsel in advance. In addition, ACLJ National provided computers and computer support services to ACLJ Northeast.

20. The Contract also states that Defendant ACLJ National will provide Plaintiff ACLJ Northeast a monthly list of potential cases, based upon that month's intake from Defendant ACLJ National and ACLJ South. Plaintiff ACLJ Northeast shall have the opportunity to request that certain cases on the monthly list be assigned to Plaintiff ACLJ Northeast for follow-up and/or prosecution. The Contract indicates that case assignments shall be made by the Chief Counsel, Jay Alan Sekulow.

### Responsibilities of ACLJ Northeast Under the Contract

21.     Plaintiff ACLJ Northeast also agreed to undertake certain responsibilities under the Contract.

22.     Plaintiff ACLJ Northeast agreed to maintain its corporate financial books and records in accordance with generally accepted accounting principles.

23.     Plaintiff ACLJ Northeast agreed to be responsible for all employee payroll functions, the filing of all necessary tax forms, and the payment of all taxes due from the organization, from funds provided by Defendant ACLJ National.

24.     Plaintiff ACLJ Northeast agreed to pay employee salaries and payroll taxes (including FICA), to pay all lease payments and related office costs (such as electricity and telephone bills), and to pay all library maintenance costs, from funds provided by Defendant ACLJ National.

25.     Plaintiff ACLJ Northeast and Defendant ACLJ National also agreed in the Contract that Plaintiff ACLJ Northeast's explicit areas of responsibility would be the states of New York, Rhode Island, Maryland, New Jersey, New Hampshire, Maine, and Connecticut, and that Plaintiff ACLJ Northeast shall have the primary responsibility for any litigation, governmental initiative, or legislative effort arising in those states.

26.     The Contract also stipulates that cases originating from the ACLJ Northeast offices shall remain within that organization, unless the Chief Counsel determines that exigent circumstances or other significant factors require a different regional ACLJ organization to handle the matter.  The Contract makes clear that the determining factors in all such decisions will be the governing laws and legal ethical responsibilities of the pertinent jurisdictions.

27. The operations of Plaintiff ACLJ Northeast have been completely dependent upon the funds provided by Defendant ACLJ National pursuant to the Contract. All operational expenses, and employee compensation and benefits of Plaintiff ACLJ Northeast are paid with the funds received from Defendant ACLJ National. As a result of the funds that Plaintiff ACLJ Northeast receives from Defendant ACLJ National pursuant to the Contract, Plaintiff ACLJ Northeast is able to represent individuals and organizations whose First Amendment rights, and family rights, have been violated without requiring those individuals or organizations to pay money to Plaintiff ACLJ Northeast for the legal services provided to them, and without requiring those individuals or organizations to pay for the litigation costs associated with the prosecution of their claims.

**Defendants ACLJ National and Sekulow Have Breached The Contract**

28. On or about January 5, 2012, an officer/agent of Defendant ACLJ National, Stuart Roth, notified Plaintiff ACLJ Northeast, through its President, Vincent McCarthy, that Defendant ACLJ National "was going in a different direction" and therefore the grant from Defendant ACLJ National to Plaintiff ACLJ Northeast would be terminated as of August 1, 2012. During said discussion, Roth did not cite any provision in the Contract as justification for termination of the grant, and neither proclaimed to have any basis for cancelling the Contract for cause, nor provided an opportunity to cure. In fact, Roth stated that the decision to terminate the Contract had nothing to do with the work of Attorney Vincent McCarthy, the President of Plaintiff ACLJ Northeast. While it was Roth who made the call to Plaintiff ACLJ Northeast on behalf of Defendant ACLJ National, it was Defendant Sekulow who made the decision to try to terminate the funding to Plaintiff ACLJ Northeast in violation of the requirements of the Contract.

29. On January 6, 2012, Defendant ACLJ National sent a letter to Plaintiff ACLJ Northeast, which is attached as <u>Exhibit B</u>. (The letter was dated incorrectly as January 6, 2011.) The January 6, 2012 letter was signed by James E. Murphy, the Vice President for Administration of Defendant ACLJ National, and stated that Defendant ACLJ National would not be renewing the Contract with Plaintiff ACLJ Northeast at the end of the current term ending on July 31, 2012. The January 6, 2012 letter from Defendant ACLJ National was also silent as to Defendant ACLJ National's reason for unilaterally cancelling the Contract, and made no claim that Defendant ACLJ National was cancelling the Contract for cause. In fact, to the contrary, the letter stated that Plaintiff's work on important litigation was much appreciated. While it was Murphy who signed the letter to Plaintiff ACLJ Northeast on behalf of Defendant ACLJ National, it was Defendant Sekulow who made the decision to try to terminate the funding to Plaintiff ACLJ Northeast in violation of the requirements of the Contract.

30. Since the Contract clearly states that Defendant ACLJ National can only terminate the Contract in writing for cause, with opportunity to cure, Defendant ACLJ National's attempt to terminate the Contract without cause, and without an opportunity to cure, violates the Contract.

31. Despite the existence and continued validity of the Contract, Defendant ACLJ National stated, before the filing of the Complaint in this case, that it would cease making the payments to Plaintiff ACLJ Northeast that are required by the Contract on July 31, 2012, and provide no reason for the attempted termination or the opportunity to cure any perceived failure to perform pursuant to the terms of the Contract. Furthermore, despite stating in its January 6, 2012 letter that ACLJ National expected the ACLJ Northeast to "continue to … be responsible for all litigation cases in which it is currently involved," counsel for ACLJ National has

demanded that ACLJ Northeast cease using its name while litigating these cases and has further contacted Plaintiff's most important client *ex parte* and told them that they must choose between ACLJ Northeast and ACLJ National at their legal counsel.

32. Through its officer and agent, Stuart Roth, Defendant ACLJ National also notified Plaintiff ACLJ Northeast that ACLJ Northeast is not to work on any new cases, even before the expiration of the current term, which is another breach of the Contract.

33. On February 7, 2012, Plaintiff ACLJ Northeast sent a letter, through its counsel, to Defendant Jay Alan Sekulow, Chief Counsel and Director of ACLJ National, and a co-signator of the Contract. Said letter demanded that Defendant ACLJ National cease violating the rights of Plaintiff ACLJ Northeast. After receiving said letter, Defendant ACLJ National failed to assure Plaintiff ACLJ Northeast that it would abide by its contractual obligations. In fact, following Defendants' receipt of that letter from Plaintiff's counsel, Defendants made it clear that they had no intention of making further payments to Plaintiff ACLJ Northeast after July 31, 2012.

34. Defendant ACLJ National has also breached its contractual obligations to Plaintiff ACLJ Northeast through other tortious and bad faith conduct.

35. Defendant ACLJ National has also breached the obligation to provide Plaintiff ACLJ Northeast with lists of potential cases, based upon the intake from Defendant ACLJ National and ACLJ South, and to provide Plaintiff ACLJ Northeast with an opportunity to request that certain cases on the monthly list be assigned to Plaintiff ACLJ Northeast for follow-up and/or prosecution.

36. The Contract specifically states that case assignments will be made by the Defendant ACLJ National's Chief Counsel, who at all times has been Defendant Sekulow. Even

though the Contract makes it clear that Plaintiff ACLJ Northeast will have primary responsibility for litigation, government initiative, or legislative efforts in Connecticut, New York, Rhode Island, New Jersey, Vermont, New Hampshire, and Maine, in recent years, Defendant Sekulow's case assignment decisions failed to give Plaintiff ACLJ Northeast primary responsibility for cases in those states.

37. Defendant ACLJ National has also already removed the attorneys of Plaintiff ACLJ Northeast from the list of counsel appearing on the website of Defendant ACLJ National, before the expiration of the current term of the Contract. The names of the attorneys of Plaintiff ACLJ Northeast had been listed as Senior counsel on the website of ACLJ National for years.

38. Defendant ACLJ National has also ceased distributing inter-office memoranda to Plaintiff ACLJ Northeast, including the Weekly Jordan Report, the Supreme Court update, and other office memos.

39. In late April 2012, Defendant ACLJ National began further breaching the Contract, and harassing ACLJ Northeast, and its President, Vincent McCarthy, through the conduct of various counsel for Defendant ACLJ National.

**Demand for ACLJ Northeast to Cease Using "ACLJ" trademarks**

40. On April 27, 2012, Defendant ACLJ National also demanded, through a letter from its counsel, Attorney Jennifer Whitelaw of the Whitelaw Legal Group, that ACLJ Northeast, and its President, Vincent McCarthy, "fully cease and desist from all use of the ACLJ Marks in any manner . . . ." because, according to Attorney Whitelaw, the permission to use "the ACLJ Mark, or any other mark within the ACLJ Family of Marks, has now been terminated." Even though the current term of the Contract did not expire until July 31, 2012, Defendant ACLJ National claimed to have terminated the ability of ACLJ Northeast to use any ACLJ mark as of

April 27, 2012, and only offered a "winding down period to allow for the complete cession of use," until May 27, 2012. Said letter is attached hereto as Exhibit C. This also represents a breach of the Contract because, in addition to other legal rights that allow Plaintiff ACLJ Northeast to continue operating under its name, Plaintiff ACLJ Northeast has a contractual right to continue operating under its name pursuant to the Contract between Plaintiff ACLJ Northeast and Defendant ACLJ National. Defendant ACLJ National is violating the Contract by trying to negate the existence of the legal entity with which it has contracted. In addition, the demand to cease using the ACLJ name is also in direct conflict with the previous statements by Defendant ACLJ National in January 2012 that ACLJ Northeast continues to be responsible for its litigation cases.

**ACLJ National's Interference with Plaintiff's Representation of a Client**

41. Through its counsel, Attorney Andrew J. Ekonomou, of The Lambros Firm, LLC, in Atlanta, Georgia, Defendant ACLJ National has also engaged in outrageous behavior designed to interfere with ACLJ Northeast's relationship with, and representation of, a client.

42. On April 30, 2012, Defendant ACLJ National sent a letter, through its counsel, Mr. Ekonomou, to a client being represented by Vincent McCarthy and Ann Louise Lohr, each of whom is a lawyer employed by ACLJ Northeast. Despite having knowledge that lawyers employed by Plaintiff ACLJ Northeast represented this client, neither Defendant ACLJ National nor its counsel, Mr. Ekonomou, sought and/or obtained consent from, Plaintiff ACLJ Northeast regarding the communication to Attorney McCarthy's and Lohr's client. Through said letter, Defendant ACLJ informed the client of ACLJ Northeast that the lawyers representing the client through ACLJ Northeast, Vincent McCarthy and Ann Louise Lohr, "will no longer be affiliated with ACLJ National," and that "with this change in representation, the ACLJ [National] will no

longer undertake to fund the defense of the litigation. The [Client] will need to make separate arrangements with [Vincent McCarthy and Ann Louise Lohr, the lawyers of ACLJ Northeast], assuming they are going to remain your lawyers, regarding the payment of costs and any attorney's fees they may charge."

43. After April 30, 2012, Attorney Ekonomou continued contacting the client of ACLJ Northeast, without the consent of counsel at ACLJ Northeast representing this client, Vincent McCarthy and Ann Louise Lohr. The purpose of these communications was to demand that the client choose between its current counsel, Vincent McCarthy and Ann Louise Lohr of Plaintiff ACLJ Northeast, and Defendant ACLJ National.

44. The efforts by Defendant ACLJ National, through its counsel, to communicate with a client of the lawyers of Plaintiff ACLJ Northeast, for the purposes of interfering with the representation of that client by the lawyers of ACLJ Northeast, without the consent of the lawyers of ACLJ Northeast, is a violation of the Rules of Professional Conduct, as well as a further breach of the contract by Defendant ACLJ National.

**Defendants' Retaliatory Withholding of Funds**

45. In order to protect its interests and pursue a preliminary injunction to protect it from suffering irreparable harm, Plaintiff ACLJ National filed the Complaint in this case on May 16, 2012.

46. On May 17, 2012, Defendant ACLJ National and Defendant Sekulow received notice, through their counsel, that Plaintiff ACLJ Northeast had commenced this action in order to protect its interests.

47. In response, Defendant ACLJ National retaliated against Plaintiff ACLJ Northeast and immediately ceased any further payments to Plaintiff ACLJ Northeast - - even though it had

previously communicated that the payments to ACLJ Northeast would continue until July 31, 2012. On May 22, 2012, Andrew Ekonomou, counsel for Defendant ACLJ National, sent the following e-mail to counsel for Plaintiff ACLJ Northeast (<u>attached as Exhibit D</u>):

> Please take notice that ACLJ's next payment to the entity "ACLJ/NE" in the amount of $12,109.17, as well as any subsequent payments under the Inter-Organizational Pledge and Grant Agreement, will be made to the trust account of The Lambros Firm, LLC to be held there pending the conclusion of the dispute that has arisen between the two entities.

48. The payment of $12,109.17 referenced in Attorney's Ekonomou's May 22, 2012 e-mail was supposed to have been paid to Plaintiff ACLJ Northeast on May 24, 2012. But, as Attorney Ekonomou promised in his e-mail, Plaintiff ACLJ Northeast did not receive a payment on that date.

49. On about June 7, 2012, Plaintiff ACLJ Northeast was supposed to receive another payment from Defendant ACLJ National in excess of $12,000.00. But, as indicated in Attorney Ekonomou's May 22, 2012 e-mail, Plaintiff ACLJ Northeast did not receive a payment on that date.

50. As a consequence of Defendants' retaliatory decision to immediately withhold funds from Plaintiff ACLJ Northeast as of May 22, 2012, instead of July 31, 2012 as Defendant ACLJ National previously communicated, Plaintiff ACLJ Northeast is now suffering immediate harm. Since Plaintiff ACLJ Northeast is completely dependent upon the support it receives from Defendant ACLJ National pursuant to the Contract, Plaintiff ACLJ Northeast has insufficient funds to pay its employees and pay its operational or business expenses

**<u>Plaintiff Will Suffer Irreparable Harm</u>**

51. Plaintiff will suffer irreparable harm if Defendant ACLJ National is allowed to continue withholding funds from Plaintiff ACLJ Northeast and Defendant ACLJ National is

allowed to permanently discontinue the funding of ACLJ Northeast that is required by the Contract.

52. If Defendants continue withholding funds from Plaintiff ACLJ Northeast as indicated in the May 22, 2012 e-mail from Attorney Ekonomou, and permanently terminate the funding provided by Defendant ACLJ National to ACLJ Northeast as of July 31, 2012, then Plaintiff ACLJ Northeast will cease to exist, its employees will lose their positions, salaries, and retirement and medical benefits, and potential clients of ACLJ Northeast will no longer be able to receive legal representation by ACLJ Northeast under the same terms that Plaintiff ACLJ Northeast has represented clients for years.

53. Since its inception in 1997, Plaintiff ACLJ Northeast has relied almost exclusively on funds from Defendant ACLJ National pursuant to the Contract.

54. Without those funds, it will not be able to pay its employees, or its operating expenses, and it will be forced to immediately shut down.

55. Plaintiff ACLJ Northeast will also be irreparably harmed by the anticipated breach by Defendant ACLJ National after July 31, 2012 because Plaintiff ACLJ Northeast will lose all of the "goodwill" that it has developed and created as an organization since its formation.

56. The demand by Defendant ACLJ National for Plaintiff ACLJ Northeast to cease using the "ACLJ" and "American Center for Law and Justice" as part of its name will also cause irreparable harm to Plaintiff ACLJ Northeast.

57. Further, the employees of Plaintiff ACLJ Northeast will lose their jobs, and ACLJ Northeast will no longer be able to represent clients in the same fashion. Since it has been able to depend on funds from Defendant ACLJ National to support its operation, the clients of Plaintiff ACLJ Northeast were never obligated to pay for the cost of the legal services they

received. If Plaintiff ACLJ Northeast no longer receives funds from Defendant ACLJ National, potential clients who are in need of the type of legal services that ACLJ Northeast provides in order to vindicate violations of their fundamental constitutional rights will also be irreparably harmed because the arrangement under which ACLJ Northeast has historically been able to represent clients, at no charge, will no longer exist.

58. There is no adequate remedy at law to obtain redress for these harms because a victory at trial at a future date - - after funding from Defendant ACLJ National to ACLJ Northeast has been terminated - - will not be able to recreate ACLJ Northeast as a viable enterprise after it no longer exists.

**V. CLAIMS FOR RELIEF**

**COUNT ONE:     BREACH OF CONTRACT**

59. Based on the foregoing Paragraphs 1 through 58, Defendants have breached their contractual obligations to Plaintiff.

60. Defendant ACLJ National and Defendant Sekulow had legally enforceable obligations to Plaintiff ACLJ Northeast.

61. Defendant ACLJ National and Defendant Sekulow breached their contractual obligations to Plaintiff ACLJ Northeast.

62. Plaintiff ACLJ Northeast has sustained, and continues to sustain, injury or damage that was caused by Defendant ACLJ National and Defendant Sekulow breaching their contractual obligations.

**COUNT TWO:  TORTIOUS INTERFERENCE (as against Defendant ACLJ National)**

63. Based on the foregoing Paragraphs 1 through 58, Defendant ACLJ National has tortiously interfered with Plaintiff's contractual and business relationships with third parties, including clients.

64. Plaintiff ACLJ Northeast has a business and contractual relationship with a third party client.

65. Defendant ACLJ National had knowledge of Plaintiff's business and contractual relationship with that third party client.

66. Defendant ACLJ National intentionally acted to interfere with Plaintiff's business and contractual relationship with that third party client.

67. Defendant ACLJ National acted tortiously, and used improper means or methods to interfere with Plaintiff's business and contractual relationship with that third party client, without justification.

68. Defendant's actions caused Plaintiff to suffer damages.

**COUNT THREE – DECLARATORY JUDGMENT (AS AGAINST ACLJ NATIONAL)**

69. Plaintiff hereby incorporates by reference its allegations in Paragraphs 1 through 58 as if fully set forth herein.

70. Defendant ACLJ National has failed to meet its legal obligations with respect to securing and maintaining trademark protection that it allegedly had or has with respect to the trademark "ACLJ" and/or "American Center for Law and Justice" (hereinafter "ACLJ trademarks") such that Plaintiff ACLJ Northeast, Inc. has the legal right to continue operating under the corporate name it has held since 1997.

71. As set forth above, Defendant ACLJ National, through its counsel, Attorney Whitelaw, sent a cease and desist letter demanding the cessation of the use of "ACLJ trademarks" by Plaintiff ACLJ Northeast and its President, Vincent McCarthy.

72. Based on the correspondence received from Attorney Whitelaw, an actual controversy exists between Plaintiff and ACLJ National.

73. Plaintiff ACLJ Northeast and Defendant ACLJ National are interested parties in this matter in that they have legal interest and rights at issue.

74. Plaintiff is uncertain as to its legal rights, interest, status, and legal relations and is fearful because of the existence of a threatened legal action with regard to Plaintiff's use of the trademarks "ACLJ Northeast" and "American Center for Law and Justice."

75. Plaintiff seeks a declaratory judgment from this Court holding that the Plaintiff's use of the ACLJ trademark(s) does/do not constitute trademark infringement under Lanham Act, Section 32, and that ACLJ has failed to take legally required steps to protect said trademark(s).

76. Therefore, Plaintiff seeks an early adjudication of its rights so it will not be hindered in the operation of its business enterprise.

**PRAYER FOR RELIEF**

1. Compensation for all damages caused by Defendants' unlawful conduct, including *inter alia*, breach of contract and tortious interference, as well as attorney's fees and costs;

2. Declaratory relief, ruling that Defendants have acted unlawfully and breached their obligations to Plaintiff. Also that ACLJ National has lost any trademark protection that it ever had by granting to ACLJ Northeast the unlimited right to use the trademark "ACLJ" and furthermore, took no steps to keep others, including ACLJ Northeast, from using this trademark with their knowledge and permission, express or implied;

3. Preliminary injunctive relief, including, but not limited to, an Order prohibiting Defendants from violating the Contract between the parties, directing Defendant ACLJ National to release funds to Plaintiff that have been withheld since May 22, 2012, and prohibiting Defendant ACLJ National from discontinuing the funding provided by Defendant ACLJ National to Plaintiff ACLJ Northeast as required by the Contract, as of and after July 31, 2012;

4. Permanent injunctive relief, including but not limited to, an Order prohibiting Defendants from breaching their contractual obligations to Plaintiff, and prohibiting Defendants from terminating or cancelling the Contract with Plaintiff without cause.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

PLAINTIFF, AMERICAN CENTER FOR LAW
AND JUSTICE – NORTHEAST, INC.


By: /s/ Todd D. Steigman
Todd D. Steigman (ct26875)
Madsen, Prestley & Parenteau, LLC
44 Capitol Avenue Suite 201
Hartford, CT 06106-1794
Tel. (860) 246-2466  Fax. (860) 246-1794
tsteigman@mppjustice.com

## CERTIFICATION OF SERVICE

I hereby certify that on this 11th day of June, 2012 a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

/s/ Todd D. Steigman
Todd D. Steigman